UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTON GROUP, LLC, an Arkansas limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SEAPORT GROUP ENTERPRISES LLC d/b/a SEAPORT MEAT COMPANY, a California limited liability company; and DOES 1-10,<br><br>Defendants. | Case No.:  3:24-cv-1624-JAH-SBC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 15]** |

## <u>INTRODUCTION</u>

Before the Court is Plaintiff Brighton Group, LLC's ("Plaintiff" or "Brighton") Motion for Summary Judgment ("Motion").  ECF No. 15.  On September 11, 2024, Plaintiff filed a complaint ("Complaint") against Defendant Seaport Group Enterprises, LLC ("Defendant" or "Seaport"), asserting breach of contract and unjust enrichment claims based on Seaport's alleged failure to pay Brighton for delivered goods.  ECF No. 1.  On November 6, 2024, Defendant answered the Complaint ("Answer").  ECF No. 4.  On July 11, 2025, Plaintiff moved for summary judgment.  ECF No. 15.  On September 3, 2025, Defendant opposed the Motion ("Opp'n," ECF No. 18), and on September 10, 2025, Plaintiff replied ("Reply," ECF No. 19).  The Court took the matter under submission, finding it suitable for adjudication on the papers.  ECF No. 20.  After a thorough review of the record, and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

//

## **BACKGROUND**

The parties generally agree on the underlying facts regarding the initial contract between Brighton and Seaport. *See* Defendant's Opposition to Plaintiff's Separate Statement of Undisputed Facts ("UMF"), ECF No. 18-1. Between October 4, 2021, and November 1, 2021, Seaport placed five orders for various beef products with Brighton. UMF No. 1. Brighton delivered the products to Seaport's facility and invoiced Seaport for a total of $545,352.55. UMF Nos. 2, 3. Seaport paid Brighton $45,500.00, with the remaining $499,852.55 left unpaid. UMF Nos. 4, 5.

On July 14, 2023, Brighton entered into a Claim Purchase Agreement ("Agreement") with Trillium Partners, LP ("Trillium"), where Brighton "agreed to sell and assign its right, title, and interest in Seaport's outstanding [$499,852.55] debt to Trillium for $400,000 (the Purchase Price)." Reply at 9. The Agreement between Brighton and Trillium provided that "[Brighton] hereby sells, transfers and assigns all right, title and interest of [Brighton] in the [Seaport outstanding debt claim] to [Trillium]." *See* Defendant's Request for Judicial Notice ("RJN"), ECF No. 18-3, Ex. A. Trillium's obligation to pay Brighton was conditioned upon a separate agreement Trillium entered with Pacific Ventures Group, Inc. ("PVG"), Seaport's parent company. Reply at 9. "Trillium was unable to perform the condition necessary for the [Agreement] to take effect," thus Trillium never paid Brighton the $400,000 purchase price. *Id.* at 10.

On September 11, 2024, Brighton sued Seaport for failure to pay the outstanding $499,852.55 debt stemming from the 2021 invoices. *See* Complaint.

On May 15, 2025, Brighton and Trillium entered into another agreement ("Release Agreement") where Trillium "hereby releases all right, title, and interest it has to the [Seaport outstanding debt claim] under the [Agreement]." *See* RJN, Ex. G. Further, "Brighton hereby releases Trillium from its obligation to pay the Purchase Price pursuant to the [Agreement]." *Id.*

//

//

2

## **LEGAL STANDARD**

Courts may enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact that "might affect the outcome of the suit" is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant carries the initial burden of establishing the absence of any genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may satisfy this burden by producing evidence that negates an essential element of the nonmovant's claim or defense, or by demonstrating that the nonmovant does not sufficiently establish an essential element to their case, on which the nonmovant bears the burden of proof at trial.  *Id.* at 322-323; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," thus, there cannot be a genuine dispute of material fact.  *Celotex,* 477 U.S. at 323.

If the movant fails to carry its initial burden, the nonmovant "may defeat the motion for summary judgment without producing anything." *Nissan Fire & Marine*, 210 F.3d at 1103 (citations omitted).  However, once the movant carries its initial burden, the nonmovant "must produce evidence to support its claim or defense." *Id.*  The nonmovant cannot merely rest on the allegations or denials in its pleadings, but instead must use affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial.  *Celotex,* 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).  Courts do not weigh conflicting evidence nor determine credibility, and all inferences are drawn "in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted).  That said, "[c]onclusory, speculative testimony . . . is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

//

3:24-cv-1624-JAH-SBC

## **DISCUSSION**

**I.      Request for Judicial Notice**

Defendant requests that the Court take judicial notice of several exhibits in support of its Opposition[1]. *See* RJN, Exs. A-G.  Plaintiff objects to all exhibits in Defendant's RJN. ECF No. 19-3.  Courts "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  Courts "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).

Exhibits B, C, D, E, and F are documents related to a state court case involving Trillium and PVG, neither of whom are named parties here.  Although court documents are proper subjects for judicial notice, the Court denies Defendant's request regarding Exhibits B, C, D, E, and F because they are irrelevant to the instant matter.

Next, Plaintiff argues that Exhibits A (Agreement) and G (Release Agreement) are not subject to judicial notice because "Plaintiff disputes the terms, nature, and meaning of the contract[s]."  ECF No. 19-3 at 2, 11.  Further, Plaintiff argues that Defendant "lacks foundation/personal knowledge to authenticate" the exhibits.  *Id.* at 2, 12.  The Court rejects these arguments for several reasons.

First, the Agreement and Release Agreement are contracts signed by Plaintiff.  *See* RJN, Exs. A, G.  Specifically, the Agreement was signed by Kenneth Griggs, Plaintiff's managing member.  Declaration of Kenneth Griggs ("Griggs Decl."), ECF No. 19-2 at ¶ 1. Griggs confirmed the existence of the Agreement and referenced several of its provisions. *Id.* at ¶¶ 2-5; *see also* Reply at 9 ("On July 14, 2023, Plaintiff entered into a Claim Purchase Agreement with Trillium").  Rather than disputing the Agreement's authenticity, Plaintiff

---

[1] Ex. A (the Agreement); Ex. B (*Trillium v. PVG* state court settlement agreement); Ex. C (*Trillium v. PVG* complaint); Ex. D (*Trillium v. PVG* notice of settlement); Exs. E, F (*Trillium v. PVG* minute orders); Ex. G (the Release Agreement)

3:24-cv-1624-JAH-SBC

argues that "the assignment between Plaintiff and Trillium was null and void when Plaintiff filed the complaint."  Reply at 9.  Griggs also confirmed the existence of the Release Agreement.  Griggs Decl. at ¶ 14 ("On May 15, 2025, Brighton and Trillium signed the 'Release of Claim Purchase Agreement' . . .").  Again, instead of disputing the authenticity of the Release Agreement, Plaintiff argues that "[t]he release was prepared and provided to Seaport . . . for the purposes of ongoing settlement discussions . . . ."  Reply at 10.

While Plaintiff may "dispute the terms, nature, and meaning of the [contracts]," Reply at 8, Plaintiff does not dispute their authenticity nor argue that the contracts are forged, altered, or incomplete.  *See* ECF No. 19-3.  For these reasons, the Court **GRANTS** Defendant's request to judicially notice Exhibits A and G.

## II.    Plaintiff's Standing to Sue

Brighton argues that summary judgment should be granted in its favor because there is no dispute that Seaport breached their contract and owes the remaining unpaid $499,852.55.  Motion at 5-6.  Although there is no dispute that $499,852.55 remains unpaid, Seaport argues that Brighton lacked standing at the time this action was filed because Brighton assigned its rights to Trillium.  Opp'n at 4-6.  The Court agrees with Seaport.

In California, "[a]n action must be prosecuted in the name of the real party in interest."  *Purcell v. Colonial Ins. Co.*, 20 Cal. App. 3d 807, 814 (1971) (citing Cal. Civ. Proc. Code § 367).  When a single and indivisible cause of action is assigned, the assignor waives that claim and the assignee becomes the real party in interest.  *Id.*  "In determining what rights or interests pass under an assignment, the intention of the parties as manifested in the instrument is controlling."  *Nat'l Rsrv. Co. of Am. v. Metro. Tr. Co. of Cal.*, 17 Cal. 2d 827, 832 (1941).

Per the Agreement, Brighton assigned Seaport's outstanding debt to Trillium in clear and unequivocal language.  *See* RJN, Ex. A; *see also Purcell*, 20 Cal. App. 3d at 814.  As such, Brighton waived any claim regarding Seaport's outstanding debt effective July 14, 2023.  *Purcell*, 20 Cal. App. 3d at 814 (By assigning the cause of action to a third party,

5

"the plaintiff simply waived any claim . . ."). As of September 11, 2024, the date Brighton initiated this action, Trillium, by virtue of the assignment, was the real party in interest. Therefore, Brighton did not have standing when it filed suit.

Acknowledging the existence of the Agreement, Brighton argues in its Reply that they have standing because "the assignment between Plaintiff and Trillium was null and void when Plaintiff filed the complaint." Reply at 9. Brighton asserts that a clause within the Agreement voided the Agreement because Trillium was unable to pay the purchase price due to a default by PVG. *Id.* at 9-10. This argument fails.

First, the Agreement plainly states, "[i]f such event of default occurs and is not cured within the prescribed time period, . . . this Agreement shall be null and void, <u>unless otherwise agreed by written agreement of [Brighton and Trillium]</u>." RJN, Ex. A (emphasis added). Such written agreement occurred when Brighton and Trillium signed the Release Agreement on May 15, 2025. RJN, Ex. B. This also demonstrates Brighton and Trillium's joint understanding that the Release Agreement was necessary to relieve them of their obligations within the Agreement. Stated differently, the mere existence of the Release Agreement disposes of Brighton's assertion that the Agreement was null and void when this action was filed. Further, it supports Defendant's argument that Plaintiff lacked standing to sue when it filed the Complaint against Defendant.

In addition, Plaintiff does not argue the issue of standing in its Motion, despite Defendant raising the issue as an affirmative defense in its Answer. *See* ECF Nos. 4, 15. The Court need not consider Plaintiff's standing argument because it was raised for the first time in the Reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted) ("The district court need not consider arguments raised for the first time in a reply brief"); *U.S. v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006) (citations omitted) ("Issues raised for the first time in a . . . reply brief are generally deemed waived").

In sum, the timeline of events here is straightforward. In 2021, Seaport allegedly breached its contract with Brighton. In July 2023, Brighton assigned its claim against Seaport to Trillium. In September 2024, Brighton sued Seaport. In May 2025, Trillium

3:24-cv-1624-JAH-SBC

released the Seaport claim back to Brighton. At the time this suit was filed, Trillium was the party in interest, and Brighton lacked standing to sue. Accordingly, Plaintiff fails to negate Defendant's affirmative defense, and Defendant has produced a genuine issue of material fact to avoid summary judgment. Therefore, the Court **DENIES** summary judgment in favor of Plaintiff on the breach of contract claim.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED Plaintiff's Motion for Summary Judgment is **DENIED**.

Dated:  February 13, 2026

_____
Hon. John A. Houston
United States District Judge

3:24-cv-1624-JAH-SBC